[No. D018644. Fourth Dist., Div. One. Mar. 9, 1994.]

CITY OF CHULA VISTA, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent;
APPROPRIATE TECHNOLOGIES II, INC., Real Party in Interest and
Appellant.

**COUNSEL**

Bruce M. Boogaard, City Attorney, John M. Appelbaum, Deputy City Attorney, Worley, Schwartz, Garfield & Rice and Charles V. Berwanger for Plaintiff and Appellant.

Latham & Watkins, David L. Mulliken and Daniel E. Butcher for Real Party in Interest and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, Scott H. Peters and Mark C. Mead, Deputy County Counsel, for Defendant and Respondent.

OPINION

WORK, Acting P. J.—The City of Chula Vista (City) appeals a judgment[1] dismissing its action after the court sustained demurrers by the County of San Diego (County) and Appropriate Technologies II, Inc. (Aptec) without leave to amend. The City had petitioned for writ and other relief after the County approved an agreement allowing Aptec to continue to operate its hazardous waste transfer and treatment facility for five years. The court found the City's claims were barred by the statute of limitations in Public Resources Code[2] section 21167, subdivision (d). Because we conclude the City's action is barred by the 180-day limitations period in that statute and it is not reasonably possible its petition can be amended to state a cause of action, we affirm the judgment.

I

In 1980, the County decided to terminate its Otay landfill hazardous waste operations and granted Aptec a five-year lease to operate a hazardous waste facility on County property located within the City. The lease was extended through September 19, 1990, when Aptec exercised its option to renew. In 1981, the City approved a conditional use permit for the Aptec facility, finding it would have no significant environmental impact and adopting the County's negative declaration.

On November 28, 1989, the County's board of supervisors considered its staff's recommendation to approve a new five-year agreement for Aptec to continue operating its facility. The staff concluded the new agreement would be exempt from the provisions of the California Environmental Quality Act (CEQA) (§ 21000 et seq.), since it would not change any existing operating condition. The staff reported that the state permit allowed Aptec to store up to 3,490 drums at any one time. A city council member, David Malcolm, spoke against the proposed agreement, citing environmental concerns and asked that at least the number of drums be reduced from that number. The staff then indicated Aptec was willing to agree to limit the number of drums to 2,000.

Following public discussion, the board of supervisors then took the following action:

---

[1]Although the City states it appeals an order sustaining demurrers, we consider its appeal to be from the court's subsequent order dismissing the City's action which is an appealable judgment, unlike an order sustaining demurrers. (*Service Employees International Union* v. *Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 756 [197 Cal.Rptr. 316].)

[2]All statutory references are to the Public Resources Code.

"1. [it] finds that the project is categorically exempt under the provisions of the California Environmental Quality Act (CEQA), Section 15301; the continued operation of a facility, with no expansion beyond existing use;

"2. in accordance with Board Policy A-87, Restrictions for Sole Source Procurement, [it] *approves and authorizes* the *Director* of Purchasing and Contracting *to enter into negotiations* with the BKK Corporation [Aptec's parent company], *and* subject to successful negotiations and determination of a fair and reasonable price, *award a service contract* for five years for the operation of an Industrial Waste Transfer/Treatment Facility; and waive[s] the advertising requirement of Board Policy A-87[;]

"and directs the CAO [Chief Administrative Officer] to: 1) not wait for the health risk assessment [required for extension of Aptec's state permit] but to proceed with a Request for Proposal for operation starting 1995; 2) report every 90 days to the Board on the progress of the search for a new site and also the alternatives CAO is considering if the health risk assessment is negative; 3) explore the possibility of hiring a negotiator outside of County staff for additional support in negotiating a new service agreement with BKK Corporation; and 4) *limit storage capacity to 2000 drums* in [the] new agreement with BKK Corporation." (Italics added.)

That same day, the County filed a notice of exemption (NOE) stating the project was categorically exempt as an existing facility pursuant to California Code of Regulations, title 14, section 15301, because "[i]t involves the continued operation of a facility with no expansion beyond existing use."[3] The NOE also stated the project was approved on November 28, 1989, and it described the nature and purpose of the project "[t]o negotiate a service agreement with the BKK Corporation for the continued operation of the Appropriate Technologies II (Ap Tech II) hazardous waste transfer/treatment facility."

On January 29, 1992, the County and Aptec executed a lease agreement providing for an initial term of one year, renewable by the County for successive one-year periods for a total of five years. It also limits the number of storage drums to 2,000. After the City unsuccessfully demanded the County rescind the agreement, it filed this petition on July 22, 1992, setting forth four claims, of which only its claim for violation of CEQA is the subject of this appeal. The petition alleges the NOE exempted only "negotiations" for an agreement and not the "award" of the agreement. Accordingly, the petition alleges the County's "award and execution" of the agreement was not included in the project description in the NOE, requiring

---

[3]California Code of Regulations, title 14, section 15302, sets forth a class of projects determined to be categorically exempt pursuant to section 21084, consisting of "the operation . . . of existing . . . facilities . . . involving negligible or no expansion of use beyond that previously existing."

environmental review pursuant to CEQA before the agreement could be awarded and executed.

The County and Aptec demurred, contending the statute of limitations in section 21167 and California Code of Regulations, title 14, section 15112, preclude the City's claim. They contended the CEQA claim was barred by the 35-day limitations period because the NOE clearly indicated "approval" of the project, and, even if the 35-day period did not apply (e.g., if the NOE were somehow defective), the broader 180-day limitations provision applied. The City's opposition asserts (i) the NOE was defective because it described the project as only "negotiations" and not approval of the agreement, and (ii) the agreement executed on January 29, 1992, provided for more expansive activities by Aptec than was described as the project in 1989.

After hearing, the court sustained the demurrers without leave to amend and dismissal of the entire case as to all parties, ruling in relevant part:

"1. *The demurrers to the first and second causes of action are SUSTAINED without leave to amend.* The first and second causes of action are barred by Cal. Pub. Res. Code § 21167(d). The Court takes judicial notice of Exhibit B to the City's petition and Exhibit 5 to Aptec's demurrer. These documents indicate that on November 28, 1989, the County Board of Supervisors (the 'Board') made a decision to negotiate and award a service contract which was exempt from the requirements of the California Environmental Quality Act ('CEQA'). Given the notice of exemption posted by the County on November 28, 1989, the 35-day statute of limitations contained in Cal. Pub. Res. Code § 21167(d) required that any lawsuit challenging the County's CEQA compliance be brought by January 2, 1990. The City's petition was not filed until July 22, 1992, well after this limitations period had expired.

"Although the City argues in opposition that the contract subsequently executed was beyond the scope of that decision, the face of the City's petition at paragraph 15 indicates otherwise.

"The Court also rejects the City's assertion that the County is estopped from asserting the statute of limitations. Because the purported misrepresentations of County employees contradict the plain meaning of Resolution No. 29, there could have been no justifiable reliance by the City." (Italics in original.)

The City's motions for reconsideration were denied.

## II

A demurrer tests the sufficiency of a complaint as a matter of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr.

264].) The allegations of fact contained in the complaint must normally be accepted as true. (*Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 722 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Noguera* v. *North Monterey County Unified Sch. Dist.* (1980) 106 Cal.App.3d 64, 66 [164 Cal.Rptr. 808].) However, a reviewing court may also consider judicially noticeable facts which the trial court did notice or properly could have noticed, such as government resolutions and other official acts. (*Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1024 [282 Cal.Rptr. 877]; *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613, 621 [129 Cal.Rptr. 575], disapproved on other grounds as stated in *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25].) Accordingly, judicially noticeable facts may supersede any inconsistent factual allegations contained in a complaint. (*Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].) ■ Further, as the California Supreme Court notes in *Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr. 543, 819 P.2d 1] "If there is a reasonable probability that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. [Citation.]" With these principles in mind, we now review the trial court's order sustaining the demurrers without leave for the City to amend its petition.

III

A.

CEQA was enacted, in part, to ensure that governmental decisionmakers and the public consider the potential effects of proposed actions upon the environment. (§§ 21001, 21004.) ■ There are generally three levels of environmental review under CEQA: (i) determination by an agency whether a categorical exemption applies and, if so, no further environmental review is required; (ii) if no exemption applies, then the agency determines whether it is reasonably possible the project may have a significant impact on the environment, and, if not, a negative declaration is issued; and, (iii) if a significant impact is reasonably possible, an environmental impact report must be prepared before the project may be approved. (*Meridian Ocean Systems, Inc.* v. *State Lands Com.* (1990) 222 Cal.App.3d 153, 159-160 [271 Cal.Rptr. 445].) If an agency determines a project is categorically exempt from the environmental review requirements of CEQA and proceeds to approve the project, any party objecting that such determination was improper must file an action within 35 days after a valid NOE has been filed by the agency. If none was filed or the NOE is defective in some material manner, the filing period for actions is limited to 180 days after the project

is approved. (§ 21167, subd. (d); *Concerned Citizens of Costa Mesa, Inc.* v. *32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 937-939 [231 Cal.Rptr. 748, 727 P.2d 1029]; *Lewis* v. *Seventeenth Dist. Agricultural Assn.* (1985) 165 Cal.App.3d 823, 831-832 [211 Cal.Rptr. 884].) However, if substantial changes are made to the "project" after the NOE filing or approval by the agency, a "new" 180-day period may begin to run from the time a plaintiff knew or should have known the project substantially differed from the original "project." (§ 21167, subd. (d); *Concerned Citizens of Costa Mesa, Inc.* v. *32nd Dist. Agricultural Assn., supra,* 42 Cal.3d at pp. 938-939.)

## B.

 To simplify our analysis of the dispositive issue, we presume, but do not decide, the wording of the NOE in this matter was insufficient to start the running of the 35-day limitations period.[4] Thus, we do not find the 35-day period relied upon by the trial court supports its order. However, we conclude the broader 180-day limitations period applies and provides an alternative basis for the court's order, because the facts alleged in the City's petition, as read in conjunction with judicially noticeable facts, clearly show that the "project" (i.e., the agreement) was approved by the County on November 28, 1989, and the actual agreement executed on January 29, 1992, was not substantially different from the original "project." Accordingly, the 180-day limitations period began to run on November 28, 1989, and expired 180 days later, barring the City's petition which was not filed until July 22, 1992.

First, the City asserts in its petition and in its appellate brief that the County merely authorized "negotiations" with Aptec regarding a lease agreement. However, the minutes of the meeting of the County's board of supervisors unequivocally show not only were negotiations authorized, but also that the agreement was "approved." As quoted in full above, the resolution adopted by the board of supervisors clearly indicates it "approves and authorizes" its staff to negotiate *and* "award" the agreement for five years to Aptec for operation of the facility. We have granted judicial notice of the board of supervisors' minutes, as well as the record of the proceedings at its November 28, 1989, meeting. As that record indicates, Malcolm represented the City and spoke against approval of the agreement. He requested that, if the County approves the agreement, it "do an extensive environmental review report" and reduce the number of stored drums from 3,500 drums. After amending the motion to reduce the number of drums to

---

[4]We also presume, but do not decide, the finding by the County that the agreement is categorically exempt from the provisions of CEQA was erroneous. However, such error by an agency does not generally preclude or delay the running of the 180-day limitations period.

2,000, the board of supervisors approved the agreement. The City cannot dispute the public record of the County's proceedings and actions taken when its own representative was present. That presence attributes actual knowledge of the County's actions to the City.

Second, the City asserts the "project" approved by the County materially differed from the actual agreement executed on January 29, 1992. In support of its contention the project was expanded beyond that originally approved, the City cites the purported increase from 1,300 drums to 2,000 drums allowed under the agreement. However, as noted above, the board of supervisors specifically discussed the number of storage drums and amended the motion to reduce the number to 2,000 in response to Malcolm's concerns, and the board of supervisors' resolution specifically approved an agreement providing for storage of up to 2,000 drums. Further, the City's assertion the agreement was expanded to increase the facility from 1.74 acres to 2.5 acres is unsupported and in direct contradiction of the express language of the actual agreement which defines the facility's site as "approximately 1.74 acres located at 1700 Maxwell Rd., Chula Vista, CA." Finally, the alleged increase in storage tanks, roll-off containers, and types of hazardous waste is similarly unsupported by the language of the agreement, much less any other evidence. Based upon the factual allegations in the City's petition as supplemented by the County's administrative record and the agreement which are judicially noticed, the agreement executed on January 29, 1992, was not materially different from the "project" (i.e., the proposed agreement) approved by the board of supervisors on November 28, 1989. Thus, the 180-day limitations period expired before the City filed its petition.[5]

## C.

Finally, we consider whether the court may have abused its discretion in sustaining the demurrer without granting the City leave to amend its petition. In light of the City's petition and the judicially noticed facts and the City's failure to show specifically how an amendment to its petition would avoid demurrer, we conclude the City has not met its burden to show it is reasonably possible to amend its petition to cure its defects.

[5]We need not address in detail the contention by the City that the County's approval of the agreement was contingent upon preparation of a health risk assessment report, because the board of supervisors' resolution clearly made no such contingency. Rather, the board of supervisors directed its staff to "not wait for the health risk assessment" which would be prepared in the course of Aptec's application for a state permit (and in any event the contingency apparently was removed when the health risk assessment was completed in October 1990). Similarly, the City's assertion the County is estopped from asserting the statute of limitations is meritless, since the actions of County staff upon which the City purportedly relied either occurred well after the 180-day limitations period expired or, in any event, could not be reasonably relied upon in light of the clear actions taken by the board of supervisors on November 28, 1989.

## Disposition

The judgment is affirmed.

Huffman, J., and Froehlich, J., concurred.

A petition for a rehearing was denied April 1, 1994, and the petition of appellant City of Chula Vista for review by the Supreme Court was denied May 19, 1994.