[No. A106592. First Dist., Div. One. July 25, 2005.]

CITIZENS TO ENFORCE CEQA et al., Plaintiffs and Appellants, v. CITY OF ROHNERT PARK et al., Defendants and Respondents; SC SONOMA DEVELOPMENT, LLC, Real Party in Interest and Respondent.

**COUNSEL**

James E. Marino for Plaintiffs and Appellants.

McDonough, Holland & Allen, Michelle Marchetta Kenyon, Gabrielle P. Whelan, Benjamin L. Stock and Megan H. Acevedo for Defendants and Respondents.

Steefel, Levitt & Weiss, Judy V. Davidoff, Michael D. Early and Amy B. Briggs for Real Party in Interest and Respondent.

OPINION

**MARCHIANO, P. J.**—Plaintiffs are a citizens group and two individuals opposed to the construction of a casino by the Federated Indians of the Graton Rancheria (Tribe). They filed an action against the City of Rohnert Park (City) and the city council that named the Tribe's independent contractor, SC Sonoma Development, LLC (Developer), as real party in interest. The action sought to force the City to comply with the provisions of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) before entering into a memorandum of understanding (MOU) with the Tribe regarding funding of possible public improvements. We affirm because the MOU is merely a funding mechanism that does not trigger CEQA review.

## BACKGROUND

The general background of this case is set out in our opinion in the related appeal in *Worthington v. City Council of Rohnert Park* (2005) 130 Cal.App.4th 1132 [31 Cal.Rptr. 3d 59] (*Worthington*). The following is a brief summary of the regulation of Indian gaming and the facts leading up to the City's MOU with the Tribe.

*Regulation of Indian Gaming*

The Indian Gaming Regulatory Act (IGRA), 25 United States Code section 2701 et seq., authorizes tribal gaming and allows state government a role in the regulation of Indian gaming. (*Artichoke Joe's California Grand Casino v. Norton* (9th Cir. 2003) 353 F.3d 712, 715 (*Artichoke Joe's*).) The Senate Select Committee Report on IGRA stated the intent to "expressly preempt the field in the governance of gaming activities on Indian lands." (See Sen. Select Com., Rep. on IGRA, Sen. Rep. No. 100-446, 2d Sess. (1988), reprinted in 1988 U.S. Code Cong. & Admin. News, pp. 3071, 3076.)

Class III gaming, which includes casino-style gambling and slot machines, is the most heavily regulated type of gaming. (*Artichoke Joe's, supra*, 353 F.3d at p. 715.) Among other requirements, class III gaming on Indian land is lawful only when located in a state that permits such gaming and only if the Secretary of the Interior has approved a Tribal-State compact.[1] (*Id.* at

---

[1] Title 25 of the United States Code section 2710(d)(3)(C) provides for provisions that may be included in a Tribal-State compact as provisions relating to: "(i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity; (ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations; (iii) the assessment by the State of such activities in

pp. 715–716; 25 U.S.C. § 2710(d)(1).) The California Constitution, article IV, section 19, subdivision (f) authorizes the Governor to negotiate such Tribal-State compacts concerning class III gaming. (*Artichoke Joe's v. Norton* (E.D.Cal. 2002) 216 F.Supp.2d 1084, 1095.)[2]

*Background of the City's MOU with the Tribe*

On or about October 14, 2003, the city council approved the MOU between the City and the Tribe that named the Developer as a third party beneficiary. The resolution stated that the Tribe had identified a site that was suitable for submission to the Secretary of the Interior for inclusion in the Tribe's replacement reservation land. The Tribe intends to use the land for construction and operation of a casino complex. The identified site is adjacent to the City within an unincorporated area of Sonoma County. The Tribe stated that it intended to establish a cooperative relationship with the City with respect to possible local impacts of the casino project.

Plaintiffs filed a petition for writ of mandate that characterized the MOU as a municipal services agreement and alleged that the City's approval committed the City to a project of constructing public facilities and providing municipal services to facilitate the development of a casino adjacent to the City.[3] They alleged that by entering into the MOU, the City violated the provisions of CEQA.

In February of 2004, the Developer and the City filed demurrers to the petition. Following a hearing, the court sustained the demurrers without leave to amend, stating that there was no "project" subject to CEQA at issue in the

---

such amounts as are necessary to defray the costs of regulating such activity; (iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities; (v) remedies for breach of contract; (vi) standards for the operation of such activity and maintenance of the gaming facility, including licensing; and (vii) any other subjects that are directly related to the operation of gaming activities."

The United States Supreme Court has limited some provisions of the IGRA. For example, in *Seminole Tribe of Fla. v. Florida* (1996) 517 U.S. 44 [134 L.Ed.2d 252, 116 S.Ct. 1114], the court ruled that a provision of title 25 United States Code section 2710(d)(7) that permits tribes to sue a state over a Tribal-State compact in federal court violated the state's sovereign immunity.

[2] Article IV, section 19, subdivision (f) of the California Constitution provides: "Notwithstanding . . . any other provision of state law, the Governor is authorized to negotiate and conclude compacts, subject to ratification by the Legislature, for the operation of slot machines and for the conduct of lottery games and banking and percentage card games by federally recognized Indian tribes on Indian lands in California in accordance with federal law. . . ."

[3] The administrative record filed in connection with the petition contained records of the city council proceedings including a resolution of the city council approving the MOU with the Tribe and the text of the MOU itself.

case and that CEQA review would apply in the future if the contemplated projects are actually constructed. Plaintiffs filed a timely notice of appeal.[4]

## DISCUSSION

Plaintiffs argue that the trial court erred for three reasons. They first contend that the court abused its discretion by sustaining the demurrers because the MOU is a development agreement pursuant to Government Code sections 65865 and 65865.2 that requires compliance with CEQA. Plaintiffs' second argument is that the MOU is preempted by the provisions of federal and state law regarding regulation of Indian gaming. Finally, plaintiffs argue that it was error to deny leave to amend. We address these contentions in the order presented and affirm.

*The MOU Is Not a Development Agreement or a CEQA "Project"*

■ Government Code section 65865 allows cities and counties to enter into development agreements for property within their sphere of influence, but the agreement does not become operative until the land to be used for development is annexed to the city.[5] Government Code section 65865.2 identifies the necessary terms in a development agreement, including duration, permitted uses, density of development, size of buildings and dedication of land for public purposes. A development agreement may have terms relating to financing and commencement and completion times of the contemplated development.[6]

---

[4] The court noted that the Developer argued that the Tribe was an indispensable party, but had not filed a special demurrer for misjoinder, and did not rule on the issue. The Developer raises the indispensable party issue on appeal. Because we affirm the judgment, we need not reach that issue.

[5] Government Code section 65865 provides in relevant part: "(a) Any city, county, or city and county, may enter into a development agreement with any person having a legal or equitable interest in real property for the development of the property as provided in this article. [¶] (b) Any city may enter into a development agreement with any person having a legal or equitable interest in real property in unincorporated territory within that city's sphere of influence for the development of the property as provided in this article. However, the agreement shall not become operative unless annexation proceedings annexing the property to the city are completed within the period of time specified by the agreement. If the annexation is not completed within the time specified in the agreement or any extension of the agreement, the agreement is null and void."

[6] Government Code section 65865.2 provides: "A development agreement shall specify the duration of the agreement, the permitted uses of the property, the density or intensity of use, the maximum height and size of proposed buildings, and provisions for reservation or dedication of land for public purposes. The development agreement may include conditions, terms, restrictions, and requirements for subsequent discretionary actions, provided that such conditions, terms, restrictions, and requirements for subsequent discretionary actions shall not prevent development of the land for the uses and to the density or intensity of development set

Our examination of the MOU in this case reveals that it contains none of the necessary provisions of a development agreement. It does not specify the permitted uses, density or intensity of use, maximum height of buildings, or contain provisions for dedication of land for public purposes. The only topics addressed in the MOU are the ways in which the Tribe agrees to mitigate potential impacts of its casino project. In addition, the City is unable to enter into a development agreement for the casino project because it has no authority over the specified county-owned land outside the City's boundaries, Indian land in general, or Indian gaming.

Plaintiffs argue that Government Code section 65865, subdivision (b) controls all development matters within the City's sphere of influence. "Sphere of influence" is defined by Government Code section 56076 as: "a plan for the probable physical boundaries and service area of a local agency, as determined by the commission." Plaintiffs did not allege in their petition that the land designated as the site of the proposed casino lies within the City's sphere of influence. Plaintiffs did not represent that they could identify evidence to support the argument that the land lies within the sphere of influence.

As expressly stated in the MOU, the City has no authority over the county-owned property that the Tribe intends to submit for inclusion in its reservation lands. (See *Citizens for Responsible Government v. City of Albany* (1997) 56 Cal.App.4th 1199, 1214 [66 Cal.Rptr.2d 102] [identifying elements that comprise a development agreement].) The undisputed facts of the petition and the attached documents that were properly subjects of judicial notice establish that the MOU is not a development agreement, and nothing indicates the land was within the City's sphere of influence.

██ It is also clear from the face of the documents subject to the trial court's judicial notice that the MOU is not a "project" as defined in CEQA. CEQA compliance is required for any "project" that may have a significant effect on the environment. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502].) CEQA guidelines provide that a project does not include: "The creation of government funding mechanisms or other government fiscal activities, which do not involve any commitment to any specific project which may result in a potentially significant physical impact on the environment." (Cal. Code Regs., tit. 14, § 15378, subd. (b)(4).)

---

forth in the agreement. The agreement may provide that construction shall be commenced within a specified time and that the project or any phase thereof be completed within a specified time. [¶] The agreement may also include terms and conditions relating to applicant financing of necessary public facilities and subsequent reimbursement over time."

In *Kaufman & Broad-South Bay, Inc. v. Morgan Hill Unified School Dist.* (1992) 9 Cal.App.4th 464 [11 Cal.Rptr.2d 792] (*Kaufman & Broad*), the court held that a school district's resolution to establish a community facilities district (CFD 1) to raise funds, "to acquire sites for the construction of schools, to lease or purchase portable classrooms and buses, and to rehabilitate future facilities" was not a "project" for purposes of CEQA compliance. (9 Cal.App.4th at pp. 464, 474.) The court explained: "The only foreseeable impact from formation of CFD 1 is that when the District does determine sometime in the future to acquire sites for the construction of schools, to lease or purchase portable classrooms and buses, and to rehabilitate future facilities it will have some of the funds necessary to do so. When it makes those decisions, which depend in large part on the pattern of development within the District, it will have to examine the environmental impacts. Here the District's resolution forming CFD 1 is not 'an essential step culminating in action which may affect the environment.' " (*Ibid.*)

The MOU in this case is similar to the funding mechanism established in *Kaufman & Broad*. It sets no time for development and does not obligate the City to undertake a specified construction project. Rather, it is an agreement to establish a source of funds for potential future improvements if the casino project takes place. The MOU specifically acknowledges that CEQA review and compliance may be required if the City ever provides infrastructure related to the casino project. Mere authorization of the funding mechanism set out in the MOU is not a "project" for purposes of CEQA.

*The Doctrine of Preemption Is Inapplicable*

Plaintiffs argue that the MOU is preempted by state and federal law because the MOU limits the state's ability to negotiate a Tribal-State compact with added environmental protection. They never raised their preemption argument below, and they base the argument on evidence that was not before the trial court.[7] Even if we were to consider this argument, the doctrine of preemption is not applicable to the City's administrative act of negotiating a funding agreement to offset potential adverse impact of a project outside the City limits. Furthermore, the MOU does not conflict with superior law or attempt to legislate in a field occupied by the state or federal government.

█ The supremacy clause of the United States Constitution, which supports the doctrine of federal preemption, provides that the laws of the

---

[7] Plaintiffs requested that we take judicial notice of Tribal-State compacts with other tribes that were not presented to the trial court, purportedly to evidence state preemption of the matters addressed in the MOU. The relevance of a compact with a different tribe is questionable. In addition, the document submitted with the request is not signed or certified. For these reasons, we deny the request for judicial notice.

United States "shall be the supreme law of the land." (U.S. Const., art. VI, cl. 2.) "It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that 'interfere with, or are contrary to,' federal law." (*Hillsborough County v. Automated Medical Labs.* (1985) 471 U.S. 707, 712 [85 L.Ed.2d 714, 105 S.Ct. 2371].) State laws may be preempted by federal regulations as well as federal statutes. (*Id.,* at p. 713.) "Also, for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." (*Ibid.*) Similarly, state law may preempt local legislation when a local ordinance conflicts with or contradicts state law, or attempts to legislate in a field that is fully occupied by state law. (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1618–1619 [27 Cal.Rptr.3d 28].)

In the related appeal in *Worthington, supra,* 130 Cal.App.4th 1132, we determined that the City's action in entering into the MOU was an administrative act, rather than a legislative act that was subject to referendum. The MOU is not an ordinance or law, and does not conflict with any superior law. It does not conflict with a Tribal-State compact between the Governor and the Tribe, as no compact has yet been negotiated and the MOU places no restrictions on the content of a future compact. The MOU does not attempt to regulate any of the matters subject to federal jurisdiction or that may be included in a Tribal-State compact, but merely provides for a funding source if the City constructs improvements in the future. (25 U.S.C. § 2710(d)(3)(C).)

Plaintiffs have identified no provision of federal or state law that prevents a local government from negotiating a funding agreement for potential future development. Neither the IGRA, nor article IV, section 19, subdivision (f) of the California Constitution authorizing the Governor to negotiate Tribal-State compacts prevent a city from making such funding agreements. The MOU is not preempted by any provision of state or federal law.

*Denial of Leave to Amend Was Not Error*

Plaintiffs argue that they requested leave to amend their petition and that the court abused its discretion by refusing to allow amendment. During argument of the demurrers, plaintiffs requested leave to amend to allege that the impacts of proposed road projects on the general plan were not addressed, that the MOU had foreseeable impacts on the environment, and what the parties to the MOU intended. These items are not facts that must be pled, but are more properly considered conclusions of fact or law. Plaintiffs did not ask to amend to allege any facts regarding preemption.

When a demurrer is sustained without leave to amend, an appellate court determines whether there is a "reasonable possibility that the defect can

be cured by amendment." (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177].) In this case, the trial court correctly sustained the demurrers because the MOU is a funding arrangement and because CEQA compliance may be required if a project is ever authorized. It would make no difference if plaintiffs were allowed to amend the petition to state the conclusions regarding the foreseeable impact of the MOU and the intent of the parties. The MOU was not subject to CEQA and no additional pleading of conclusions of law or fact would have changed that decision. The court did not abuse its discretion by denying leave to amend.

## CONCLUSION

The judgment is affirmed.

Swager, J., and Margulies, J., concurred.