Filed 9/26/22  Save the Field v. Del Mar Union School Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAVE THE FIELD, | D079480 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00020207-CU-TT-CTL) |
| DEL MAR UNION SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego County, Joel R. Wohlfiel, Judge.  Motion to dismiss denied; judgment and order affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Rebecca L. Reed for Plaintiff and Appellant.

Atkinson, Anderson, Loya, Ruud & Romo, Wendy H. Wiles, Jeffrey Werner Frey and Nicolle A. Falcis for Defendant and Respondent.

After respondent Del Mar Union School District (District) certified a mitigated negative declaration and approved an elementary school rebuild project (the Project), appellant Save The Field petitioned for a writ of mandate alleging violations of the California Environmental Quality Act

(CEQA; Pub. Resources Code,[1] § 2100 et seq.).  The superior court found deficiencies in three areas: traffic, construction noise, and biological resources, and issued a peremptory writ of mandate ordering District to (1) vacate its resolution approving the Project; (2) vacate its certification of the mitigated negative declaration and (3) comply with CEQA.  After allowing the parties to brief the remedy, the court gave District three options to proceed, including by using a "focused" environmental impact report (EIR), which District prepared and eventually certified.  The court then discharged the writ.

Appellant filed a notice of appeal of the court's judgment granting the peremptory writ of mandate and later amended its notice to include the order discharging the writ.  It contends that once the court vacated the mitigated negative declaration and found the Project may have significant environmental impacts, it erred by permitting District to proceed by way of a focused EIR; that we should partially reverse the judgment with directions that District prepare a "full" EIR for the Project.

District has moved to dismiss the appeal, arguing it is moot in part because appellant did not file a separate action challenging the focused EIR.  It further argues appellant waived or forfeited its right to appeal the court's order discharging the writ by failing to object below to certain of District's actions and/or it is estopped from appealing the order discharging the writ.

---

[1]    Undesignated statutory references are to the Public Resources Code. CEQA provisions are implemented by Guidelines that are found in the California Code of Regulations, title 14, sections 15000 et seq. (Guidelines). "These guidelines . . . are 'central to the statutory scheme' . . . . [W]e afford [them] 'great weight' unless a provision is 'clearly unauthorized or erroneous under the statute.' " (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 954.)

We conclude the appeal is not moot, reject District's forfeiture and timeliness arguments, and deny the motion to dismiss. On the merits, we hold appellant has not demonstrated District's focused EIR, notwithstanding its nomenclature, violated CEQA by precluding informed agency decisionmaking and informed public participation. Accordingly, we affirm the judgment and order.

FACTUAL AND PROCEDURAL BACKGROUND

In February 20, 2020, District published a notice of intent to adopt a mitigated negative declaration[2] for the Project, which would demolish, redesign and rebuild the Del Mar Heights Elementary School. In part, the Project expands the school's footprint by approximately 14,400 square feet to about 66,800 total square feet, and builds additional paved parking on existing grass fields. District determined the Project would have no significant adverse impacts on the environment such that a mitigated negative declaration was appropriate. In May 2020, District's governing board adopted the mitigated negative declaration and approved the Project.

---

[2] District's mitigated negative declaration was also its initial study, and in fact is entitled only "Initial Study." A mitigated negative declaration is prepared when an initial study for a project has identified potentially significant effects on the environment, but (1) the applicant's prior revisions in the project plans or proposals would avoid or mitigate the effects to a point where no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment. (Guidelines, § 15369.5; see *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1186-1187.)

District filed a notice of determination (§ 21152)[3] advising of its actions and stating the Project would not have a significant effect on the environment.

The following month, appellant filed a verified petition for a writ of mandate against District. In part, appellant alleged the mitigated negative declaration failed to comply with CEQA in numerous respects, including by understating the severity and scope of the environmental impacts. It prayed for issuance of both alternative and peremptory writs.

In December 2020, the trial court issued a writ of mandate vacating the mitigated negative declaration and the Project's approval, and suspending all activity until District fully complied with CEQA. The court rejected many of appellant's claims. However, it found deficiencies with District's conclusions as to construction noise, traffic impacts on neighboring residential areas, and biological resources. More specifically, the court found substantial evidence supported a fair argument that a significant environmental impact could result from noise levels for construction activities occurring closer to nearby residences. It found the record supported a fair argument that increased vehicle access combined with construction of a new entry point (an Americans with Disability Act (ADA)-compliant ramp and stairs) onto the school grounds would increase vehicle traffic on a neighboring residential cul-de-sac, a significant environmental impact. It also found the analysis lacked data on impacts to a particular chaparral habitat on which the Project would

---

[3]    A "notice of determination" is "a brief notice to be filed by a public agency after it approves or determines to carry out a project which is subject to the requirements of CEQA." (Guidelines, § 15373.)

4

encroach and a plant within that habitat.[4]  The court invited the parties to submit briefing on how to style a proposed writ.

In January 2021, District's board voted to remove the proposed ADA-compliant ramp and stairs from near the end of the residential street. Thereafter, the parties submitted briefing regarding the substance of a peremptory writ and proper remedy.  Appellant argued CEQA, its Guidelines and case law mandated that District prepare a full, not a "limited," EIR.  It maintained the law required a full EIR be prepared even if a court found a mitigated negative declaration inappropriate on limited grounds, and District had no discretion to prepare a revised mitigated negative declaration. Appellant argued a limited EIR would not comply with CEQA as District was required to analyze the project as a whole, and "describe a reasonable range of alternatives to the proposed project and its location that would feasibly attain the project's basic objectives while avoiding or substantially lessening the project's environmental impacts."

Pointing out appellant had raised challenges in eight CEQA categories involving 13 issues but succeeded on only three, and thus the "vast majority" of the mitigated negative declaration satisfied CEQA and its goals, District argued a full EIR was not warranted, necessary or equitable.  It maintained CEQA and case law gave the court broad discretion to craft equitable remedies and District discretion to prepare another mitigated negative

---

[4]    As to the latter point, the court ruled District had not gathered relevant data on the Southern Maritime Chaparral habitat including the extent to which it would be disturbed, and that it was unknown whether an endangered plant was even located where certain repairs would take place. The court thus found substantial evidence established a fair argument that the Project would result in a significant impact to biological resources through the disturbance of sensitive habitat, potentially including an endangered plant species.

declaration. District argued *Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260 (*Preserve Wild Santee*) authorized the court to issue the "limited" writ District sought, that is, to recirculate the mitigated negative declaration regarding only the temporary construction noise and biological resources issues, as it had satisfied the potential traffic issue having removed the Project's stairs and ramp.

In February 2021, the superior court ruled, citing section 21168.9,[5] that in the event of a finding that a public agency has not complied with CEQA, it could not direct the agency to exercise its discretion in any particular way. It stated District had three choices if it chose to proceed with the Project: prepare and circulate a complete EIR, a "focused" EIR, or a second mitigated negative declaration, any of which would satisfy CEQA

---

[5] Section 21168.9 governs the judicial remedies for CEQA violations. (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 713-714; *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1121-1122 (*Berkeley Hillside Preservation*); *Preserve Wild Santee, supra*, 210 Cal.App.4th at pp. 288-290.) In part, it provides: "If a court finds, as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the following: [¶] (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part. [¶] . . . [¶] (3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division." (§ 21168.9, subd. (a).) It further provides: "Nothing in this section authorizes a court to direct any public agency to exercise its discretion in any particular way. Except as expressly provided in this section, nothing in this section is intended to limit the equitable powers of the court." (§ 21168.9, subd. (c).)

requirements. The court left the decision to District's discretion.[6] It entered a judgment on appellant's peremptory writ of mandate ordering District to set aside and vacate its resolutions approving the Project and decertify the Project's mitigated negative declaration; suspend effective December 22, 2020, all Project activities that could result in any change or alteration to the physical environment until District reconsidered its resolution and brought it into compliance with CEQA; comply with CEQA; and file a return to the writ of mandate within 30 days after service of the writ. The court gave appellant 20 days from the date of the return to file objections. It retained jurisdiction over the proceedings by way of a return to the writ until District complied with CEQA.

Thereafter, District filed three returns to the peremptory writ of mandate, one in March 2021 and two in April 2021. In its initial return, District advised the court that its board had held a special meeting and decided to pursue a focused EIR. It stated it vacated the resolution that led to the mitigated negative declaration and the Project's approval, and on March 1, 2021, had published a notice that it was proposing to prepare the focused EIR. The initial return indicated the public had until March 30,

---

[6]    The court's order provides in part: "Given the Court's prior ruling granting the writ of mandate . . . , Respondent is left with three choices if the Rebuild Project is to go forward: it may prepare and circulate a complete EIR, a 'focused' EIR or a second [mitigated negative declaration]. The briefing provides cogent argument why any of these scenarios could satisfy the requirements of CEQA. However, Respondent must be afforded the discretion to choose the path forward. The Court lacks the authority to mandate any particular procedure, and any finding in that regard would constitute an impermissible advisory ruling. The redactions and modifications to the judgment and writ of mandate are intended to permit Respondent with sufficient latitude to exercise its discretion. Of course, any procedure Respondent chooses to follow will be subject to subsequent judicial review."

2021, to comment on the notice of preparation. On March 28, 2021, the court entered another judgment that incorporated handwritten notations it had made in its February 2021 judgment. That judgment states that the court "shall reserve and retain jurisdiction over this action until such time as [District] files a return evidencing that it has complied with the attached Peremptory Writ of Mandate."

In its second return, District informed the court that it had received public comments on its notice of preparation. It advised the court it was preparing a draft focused EIR, planned to obtain and consider public comments on the draft, distribute a proposed final EIR, and consider that and the Project at a future board meeting. In its third return to the writ, District advised the court that at the end of April 2021 it had published a notice of availability of a draft focused EIR. It provided an estimated schedule for responding to comments, distributing a final EIR, and conducting its board meeting.

In June 2021, District issued its final focused EIR.[7] That month, its board approved Resolution No. 2021-11, adopting findings under CEQA and certifying the final focused EIR. The resolution recites the procedural history of the matter. It acknowledges that the court gave District the option of preparing a focused EIR and states that "the draft focused environmental impact report . . . was prepared to analyze the two remaining environmental issues of the Project—(1) potential impacts to the Southern Maritime Chapparal habitat and any endangered plant species caused by the Project; and (2) potential impacts of construction noise on adjacent residential sensitive receptors . . . ." It recites that the CEQA findings of fact for the focused EIR "also include findings on environmental issues addressed in the [mitigated negative declaration] (excluding Certain Biological Resources and construction noise), which concluded that all environmental impacts were either less than significant or mitigated to a less than significant level." The board "approve[d], adopt[ed], and certifie[d] the [mitigated negative declaration] (excluding Certain Biological Resources and construction noise),

---

[7] District seeks judicial notice of 14 volumes of CEQA documents consisting of (a) District's draft focused EIR for the Project; (b) the final focused EIR; (c) findings of fact for the final focused EIR; and (d) a copy of a mitigation monitoring and reporting program for the final focused EIR. It points out these documents were provided to the trial court and appellant via an Internet link in its final return to the peremptory writ of mandate but asserts the link is no longer available. According to District, the documents, which were incorporated into its board's June 2021 resolution by reference and are judicially noticeable as a legislative enactment, are relevant because they served as part of the basis for the lower court's order discharging the writ. We grant the unopposed request, not for the truth of the contents of these documents, but to assess whether the focused EIR is in fact a "full and complete" EIR as District maintains. (Accord, *Farmland Protection Alliance v. County of Yolo* (2021) 71 Cal.App.5th 300, 306, fn. 3 (*Farmland Protection*).)

the Final [focused] EIR and the CEQA Documents, including, but not limited to, the Findings of Fact and the Mitigation Program" and approved the Project.

In July 2021, District filed a final return requesting that the court discharge the peremptory writ of mandate. It advised the court that it had accepted public comments on the draft focused EIR, responded to them, and e-mailed written responses to comment letters at least 10 days before certifying the final focused EIR.

On July 19, 2021, the court issued an order discharging the peremptory writ of mandate, stating District had complied with and fully satisfied the judgment, the writ of mandate, and CEQA. District filed a notice of entry of that order the following day. On July 27, 2021, District filed a notice of determination advising that it had approved the Project, prepared an EIR, and that the Project would not have a significant effect on the environment.

On August 6, 2021, appellant filed a notice of appeal of the court's February and March 2021 judgments. On September 15, 2021, it filed an amended notice of appeal of the court's July 19, 2021 order discharging the writ.

DISCUSSION

I. *Motion to Dismiss Appeal*

District moves to dismiss this appeal on several grounds. Comparing the circumstances here to *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2016) 2 Cal.App.5th 588 (*La Mirada*), it argues the appeal is entirely moot because the court decertified District's mitigated negative declaration, and appellant failed to separately challenge District's focused EIR. District characterizes its focused EIR as a subsequent legislative action that moots the appeal. District further argues appellant is

10

time-barred from challenging the focused EIR and has either forfeited its rights concerning the court's July 19, 2021 order discharging the writ or should be estopped from challenging it in part because it did not object to any of District's returns. District maintains the deadline to file a notice of appeal of the court's order discharging the writ expired on August 26, 2021, before appellant filed its September 2021 amended notice of appeal, and thus the focused EIR is final and conclusive under section 21167.2, which provides that an EIR is conclusively presumed to be valid after the 30-day limitations period in section 21167 expires.

In opposition, appellant states it is not challenging the court's decision to vacate the mitigated negative declaration. It asserts the issue on appeal is the scope of remedies available to District, namely whether a focused EIR can be the "sole operative environmental document" on a project having potential significant impacts on the environment. Appellant points out it specifically objected to District's preparation of a focused EIR in its briefing below before the court entered judgment on the peremptory writ of mandate, arguing this preserved the challenge. It argues its appeal is not moot because District continues to dispute the legality of its actions and may continue the illegal action. Appellant further argues that even if the issue is moot we should decide the matter because whether a focused EIR can serve as the single operative environmental document is an important issue in the public interest. Appellant finally argues its dispute with District is likely to recur, as it has continued to require District to fully comply with CEQA.

In reply, District argues appellant is challenging the court's February 8, 2020 minute order but did not appeal that order, which is not appealable in any event. District also maintains it "engaged in a full EIR," and did not

11

merely "fix" its mitigated negative declaration as appellant argues.[8]  District argues the appeal is still moot regardless because appellant did not challenge the focused EIR within 30 days of the District's filing of its notice of determination as required by section 21167 and *Environmental Protection Information Center, Inc. v. State Bd. of Forestry* (1993) 20 Cal.App.4th 27 (*EPIC*).  According to District, *EPIC* dismissed as time-barred a supplemental writ petition against a public agency that had reapproved a project after complying with a writ challenging the project's approval, because the petitioner did not file a new challenge within 30 days of the project's reapproval.  District argues *EPIC* supports its position, as appellant did not challenge its focused EIR within 30 days of its approval.

---

[8]     We reject District's suggestion—made for the first time in its reply— that we should dismiss the appeal because appellant did not state in its notice of appeal that it was appealing the court's February 8, 2022 minute order.  Appellant acknowledges that its first notice of appeal was of the superior court's judgment.  That judgment was entered on the same day as the court's minute order.  An order that is not appealable may be challenged in an appeal from an ensuing judgment.  (See *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776, fn. 3; *Gavin W. v. YMCA Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669 [appeal from a judgment encompassed nonappealable order not identified in notice of appeal].)  Appellant's appeal from the judgment thus permits it to challenge the superior court's minute order.  District's concession that the February 8, 2022 minute order is not separately appealable means appellant did not need to separately identify it in its notice of appeal.  (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 ["If an order is appealable, an aggrieved party must file a timely notice of appeal from the order to obtain appellate review.  . . .  A notice of appeal from a judgment alone does not encompass other . . . separately appealable orders"].)  District's argument that it prepared a full EIR is duplicated in its brief on the merits. We address it below.

A. *The Appeal Is Not Moot*

We conclude this appeal was not rendered moot by District's action vacating its mitigated negative declaration. As District acknowledges, appellant does not challenge District's preparation of the mitigated negative declaration, but the court's later decision giving District the option of preparing a limited or focused EIR rather than a full EIR, which would assertedly address all relevant CEQA considerations, and the court's order discharging the writ.[9] Appellant asks us to reverse the judgment with directions that District be ordered to prepare an EIR for the entire Project. District's compliance with the court's remedy will not render moot an appeal that challenges the validity of that remedy. (*Golden Gate Land Holdings LLC v. East Bay Regional Park Dist.* (2013) 215 Cal.App.4th 353, 366.)

Under these circumstances, *La Mirada* is inapposite. That case involved a successful lower court challenge to a city's grant to a project applicant of exceptions from a plan governing development (and related project approvals), resulting in a peremptory writ of mandate invalidating the exceptions and approvals. (*La Mirada, supra,* 2 Cal.App.5th at pp. 588-589.) The project applicant appealed and one of the challengers filed a cross-appeal, but both parties agreed those appeals became moot when the city approved an amendment to the plan that rendered it unnecessary for the applicant to rely on the exemptions. (*La Mirada,* at pp. 589-590.) In that

---

[9] In its reply brief on appeal, District acknowledges this appeal "is not about the content of the [mitigated negative declaration] or whether the [mitigated negative declaration] was unsatisfactory" but "is about the alleged error in the remedies the trial court ordered." Though District disputes appellant's ability to challenge the court's later order discharging the writ, it likewise states that appellant "is not challenging the District's actions" but "the action of the trial court in issuing the discharge order." (Some capitalization omitted.)

instance, the city's action had rendered it impossible for the appellate court to grant effective relief. (*Id.* at p. 590.) Because appellant here is not seeking appellate relief relating to the now-vacated mitigated negative declaration, we do not reach the same conclusion as the *La Mirada* court.

We disagree with District's arguments based on the timing of appellant's challenges, appellant's failures to object to District's various returns to the peremptory writ, or appellant's failure to file a new, separate action challenging the focused EIR. District cites no authority for the proposition that appellant's failure to object to the various returns to the peremptory writ of mandate renders its CEQA challenge moot or forfeited, so we need not consider the assertion further. (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 371 [absence of cogent legal argument or citation to authority allows court to treat contention as waived].)[10]

Nor do we agree with District's claim that we cannot grant effective relief because appellant did not file its amended notice of appeal until after the deadline to challenge the focused EIR assertedly expired on August 26,

---

[10]    In *City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, the court pointed out: "It is well[-]settled that the court which issues a writ of mandate retains continuing jurisdiction to make any order necessary to its enforcement. [Citations.]  Where, as here, the writ remands the matter to the administrative body with directions to proceed in a certain manner, and the return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim in one of several ways.  Petitioner may proceed by a new petition under Code of Civil Procedure section 1094.5, or by supplemental petition (using the original action number). [Citations.]  But the petitioner is not required to proceed by writ; if it or the court is not satisfied with the return, the court may, on its own motion or on that of the petitioner, either oral or written, order the respondent to reconsider further." (*Id.* at p. 971.) Appellant's challenge by way of appealing the court's postjudgment order discharging the writ was yet another manner of contesting the return.

14

2021, and thus the focused EIR is "final and conclusive" under section 21167.2.  An untimely notice of appeal eliminates our ability to act on the appeal not because of mootness, but because we would lack jurisdiction to consider it.  (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 187, citing Cal. Rules of Court, rule 8.104(b) & *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.)  We explain below that appellant's September 15, 2021 amended notice of appeal is not untimely.

Considering District's other timeliness points, we reject them.  The arguments are akin to challenges based on CEQA statutes of limitation, but misperceive their operation.  District initially approved the Project on May 12, 2020, and filed its notice of determination the following day, on May 13, 2020.  Appellant filed its verified petition for a writ of mandate 30 days later on June 12, 2020, within the timeframe for filing an action challenging District's determination.  (§§ 21152, subd. (a), 21167, subd. (b) [action challenging public agency's determination whether a project may have a significant effect on the environment shall be commenced within 30 days from the filing date of the notice of determination]; *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 51; *Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1594.)  District did not challenge the timeliness of that petition in its opposition brief below.

The CEQA "limitations period starts running on the date the project is approved by the public agency and is not retriggered on each subsequent date that the public agency takes some action toward implementing the project." (*Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, 1045; see also *County of Mono v.*

*City of Los Angeles* (2022) 81 Cal.App.5th 657, 678; *Citizens for a Green San Mateo v. San Mateo County Community College Dist.*, *supra*, 226 Cal.App.4th at pp. 1594-1595; accord, *City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1717, 1720-1721 [notice of exception stating project approval triggered limitations period, not later lease agreement for the project].)  An approval under the Guidelines is a public agency's decision that " 'commits the agency to a definite course of action in regard to a project intended to be carried out by any person' " (*Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 106) and adoption of a resolution, as occurred here, often constitutes approval. (*Id*. at pp. 106-107, quoting Guidelines § 15352, subd. (b).)  "[A] 'project' refers to the activity that is being approved, which may include multiple discretionary approvals by governmental agencies.  [Citation.]  'The term "project" does not mean each separate governmental approval.'  [Citation.]  ' "This definition ensures that the action reviewed under CEQA is not the approval itself but the development or other activities that will result from the approval." ' " (*Van de Kamps Coalition*, at p. 1046.)

Extending these principles to the present circumstances, we hold the CEQA limitations period did not restart when District filed a second notice of determination that it had elected to prepare a focused EIR.  *Citizens for a Megaplex-Free Alameda* is instructive.  In that case, the Court of Appeal rejected an argument that a second notice of determination triggered a new 30-day CEQA statute of limitations. (*Citizens for a Megaplex-Free Alameda v. City of Alameda*, *supra*, 149 Cal.App.4th at p. 109.)  There, the public agency, a city, filed a notice of determination in May 2005 regarding its adoption of a mitigated negative declaration and approval of a theater project development agreement. (*Id*. at pp. 98-99.)  The city's planning board the

16

following month accepted revised designs for a cineplex and parking garage, and approved a use permit and design review for those aspects in September 2005. (*Id*. at p. 99.) The city council upheld that decision in August and November 2005 resolutions, finding that since the mitigated negative declaration was adopted, " 'there ha[d] been no change to the project or substantial changes in circumstances or new information that would warrant subsequent environmental analysis in accordance with CEQA[ ].' " (*Ibid*.) It then filed notices of determination for each of those actions. (*Ibid*.)

The challenger filed a petition for writ of mandamus in October 2005, alleging a CEQA cause of action challenging the adequacy of the mitigated negative declaration and the August and November 2005 actions upholding the planning board's decisions. (*Citizens for a Megaplex-Free Alameda v. City of Alameda, supra*, 149 Cal.App.4th at pp. 100, 101.) The lower court ruled the action was time-barred as filed more than 30 days after the city issued its first, May 2005, notice of determination. (*Id*. at p. 101.)

The Court of Appeal affirmed. (*Citizens for a Megaplex-Free Alameda v. City of Alameda, supra*, 149 Cal.App.4th at pp. 108-110.) It pointed out that under CEQA, a project " 'refers to the *underlying activity* which may be subject to approval by one or more governmental agencies; it does not refer to each of the several approvals sequentially issued by different agencies' " and that this definition ensured "that the action reviewed under CEQA is not the approval itself but the development or other activities that will result from the approval.' " (*Id*. at p. 106.) It explained that the city's decision to file notices of determination related to subsequent approvals did not extend the limitations period for challenging the mitigated negative declaration that was the subject of its first notice of determination. (*Id*. at p. 110.) The appellate court distinguished authority relied upon by the project applicant—*El Dorado*

17

*Union High School Dist. v. City of Placerville* (1983) 144 Cal.App.3d 123—as involving two separate approvals, notices of determination and projects: the first for rezoning the property at issue, and the second approving a subdivision map that did not exist at the time of the first approval. (*Citizens for a Megaplex-Free Alameda, supra,* 149 Cal.App.4th at p. 109, discussing *El Dorado Union*, at pp. 127-130.) The court stated *El Dorado* "did not hold that an agency's filing of a second notice of determination permits a party to challenge the decision that was the subject of the first notice of determination after the 30-day limitations period for the earlier notice of determination has expired." (*Citizens for a Megaplex-Free Alameda,* 149 Cal.App.4th at p. 110.) This conclusion, the court held, promoted CEQA's policy to promptly resolve challenges to public agency land use decisions. (*Id.* at p. 111.)

Concededly the circumstances here differ from those in *Citizens for a Megaplex-Free Alameda* as they involve the lower court's ruling on the underlying writ requiring District to prepare a new environmental document addressing potential significant environmental impacts and District's resulting decision to prepare and approve a focused EIR. But District's ensuing reapproval was for the same elementary school rebuild project—the " '*underlying activity* which may be subject to approval . . . .' " (*Citizens for a Megaplex-Free Alameda v. City of Alameda, supra*, 149 Cal.App.4th at p. 106), and as a result, no new statute of limitations was triggered by the later reapproval. (*Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist., supra,* 206 Cal.App.4th at p. 1045; *Citizens for a Megaplex-Free Alameda,* 149 Cal.App.4th at p. 110.) That District was ordered to vacate its approval and announced via a new notice of determination that it elected to proceed with the same Project and land use decision by way of a focused EIR did not start a new statute of limitations,

18

and thus appellant was not required to refile its writ or otherwise renew its challenge below. Indeed, appellant's timely-filed writ proceeding challenging the Project's CEQA compliance was still pending at the time of District's decisions relating to its focused EIR.[11] This outcome does not disturb the "key policy served by [CEQA statutes of limitation]: 'the prompt resolution of challenges to the decisions of public agencies *regarding land use.*'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 50, italics added.) A "bright-line" rule triggering the limitations period by a notice of determination is to "allow[ ] local governments and developers to *proceed with projects* without the threat of potential future litigation." (*Ibid.*, italics added.) Here, where appellant timely challenged the Project's approval by writ and its proceeding was still pending when District made its later decision, the purpose of this rule was met.

Our conclusion is not changed by *EPIC*, *supra*, 20 Cal.App.4th 27. There, a state board approved a timber logging plan in March 1991, and two challengers filed a petition for a writ of mandate alleging the plan failed to include adequate surveys for a wildlife species and had insufficient proposed mitigation measures. (*EPIC*, at p. 29.) The board did not oppose the writ, indicating it was prepared to set aside its approval, and thereafter the

_____

11   To be sure, appellant's writ petition focuses mainly on the adequacy and CEQA deficiencies of District's initial study and mitigated negative declaration. But appellant also alleged that "[t]here is a fair argument based on substantial evidence that the Project may have a significant effect on the environment, and accordingly, [District] violated CEQA by failing to prepare an Environmental Impact Report for the Rebuild Project." The petition prayed that the court vacate District's Project approval. Appellant's writ proceeding was not dismissed when the court entered judgment as the court retained jurisdiction over District's compliance.

superior court issued an alternative writ commanding the board to set its approval aside or show cause why it had not done so.  (*Id*. at pp. 29-30.)  In September 1991, the board complied with the writ by setting aside its approval, and stated it would hold a public hearing on the matter.  (*Id*. at p. 30.)  It also filed a return stating it had fully complied with the alternative writ.  (*Ibid*.)

Thereafter, the board reconsidered its plan, and in March 1992 it again approved it.  (*EPIC*, *supra*, 20 Cal.App.4th at p. 30.)  Six months after the board's reapproval, one of the challengers filed a "supplemental" writ petition in the same superior court proceeding.  (*Ibid*.)  The real party in interest demurred on grounds the initial mandate proceeding had been concluded by the filing of the return showing full compliance, and further that the new pleading was not filed within 30 days of board's March 1992 approval.  (*Id*. at pp. 30-31.)  The superior court dismissed the supplemental petition.  (*Id*. at p. 28.)

The Court of Appeal affirmed.  It pointed out the appellant relied on authorities giving courts inherent, continuous jurisdiction to enforce *peremptory* writ of mandate.  (*EPIC*, *supra*, 20 Cal.App.4th at p. 31.)  The court observed the appellant cited no authority for its proposition that a court issuing an *alternative* writ retained jurisdiction by operation of law to monitor an agency's future activity even though the agency had fully complied with the alternative writ.  (*Ibid*.)  The *EPIC* court held that the jurisdiction to enforce a judgment "is very different from some sort of inchoate jurisdiction over a proceeding which is moot," as the proceeding there became once the board had fully complied with the alternative writ.  (*Id*. at pp. 31-32.)  The court said, "Given full compliance with the alternative writ, no further judicial action could be taken save dismissal: Mandamus

20

does not lie to compel that which is being done voluntarily." (*Id.* at p. 32.) According to the *EPIC* court, the lower court lacked " 'watchdog' jurisdiction" over the matter; and a conclusion otherwise "invites a procedural open-endedness which is inconsistent with CEQA's general policies in favor of expeditious review." (*Ibid.*)

The Court of Appeal affirmed on an additional ground: that the petitioner did not meet CEQA's short limitations period (§ 21080.5, subd. (g)) and "file something" within 30 days of the agency's March 1992 reapproval of the plan. "Given [petitioner's] failure to file a timely challenge to the reapproval, the appropriate label for its untimely challenge is academic." (*EPIC, supra*, 20 Cal.App.4th at p. 32.)

Unlike *EPIC*, the superior court in this case issued a peremptory writ and retained jurisdiction in two ways. It expressly retained jurisdiction in its order under section 21168.9, subdivision (b) [once superior court issues a mandate relating to a CEQA violation, it "shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division"].) The nature of the peremptory writ itself vested the court with inherent continuing jurisdiction to make orders for the writ's enforcement. (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist.* (2012) 209 Cal.App.4th 1348, 1355; *Kings v. Woods* (1983) 144 Cal.App.3d 571, 578.) Accordingly, this is not a matter of the court exercising "inchoate" jurisdiction over a moot proceeding, which was the premise of *EPIC*'s holding. As for *EPIC*'s discussion of the statute of limitations, it is dictum, and also was based on the timeframe for filing a challenge to a regulatory program under section 21080.5. *EPIC* does not compel dismissal of appellant's appeal.

21

B. *Appellant Did Not Waive or Forfeit its Right to Appeal*

District's argument concerning appellant's asserted waiver of its right to appeal is based on general principles concerning a party's obligation to object or bring the lower court's attention to error below, and principles of invited error. The argument is unavailing.

When given the opportunity to brief the lower court on the appropriate remedy under CEQA following decertification of the mitigated negative declaration, appellant specifically argued that District was obligated to prepare a full EIR addressing the entirety of the Project, not merely a limited EIR covering only those subjects the court found deficient. In our view, this properly preserved a challenge to District's focused EIR under general principles of waiver and forfeiture, whose purpose, as District itself acknowledges, " ' " ' "is to encourage a [party] to bring errors to the attention of the trial court, so that they may be corrected or avoided . . . ." ' " ' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) The court rejected appellant's argument in its February 2021 ruling, and appellant's acquiescence in that ruling is neither a waiver nor grounds for estoppel or invited error. " ' "An attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible." ' " (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213; see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [addressing invited error as an " 'application of the estoppel principle' " and rejecting argument that appeal was barred due to a stipulated judgment].)

C. *Appellant's September 2021 Amended Notice of Appeal Is Timely*

District does not challenge the timeliness of appellant's notice of appeal of the February 2021 judgment, and thus appellant is entitled to challenge the writ's directives and validity. (Compare *San Diego Unified Port Dist. v. California Coastal Com.* (2018) 27 Cal.App.5th 1111, 1128 [failure to appeal a judgment granting a peremptory writ forfeits the right to appeal the writ's directives or wording].) The court's judgment granting the peremptory writ is final and appealable regardless of the additional proceedings involving District's returns or the court's retention of jurisdiction over compliance with the writ. (See *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1116-1117 [judgment partially granting petition in an administrative mandamus proceeding was final when nothing remained to be done " ' "except the fact of compliance or noncompliance with the terms of the first decree" ' "]; *Los Angeles Internat. Charter High School v Los Angeles Unified School Dist.*, *supra*, 209 Cal.App.4th at pp. 1354-1355 [fact that "there are additional proceedings involving the return on the [peremptory] writ does not change the finality of the judgment issuing the writ"].) Here, as stated, the court reserved jurisdiction under section 21168.9 "by way of a return to the peremptory writ until the court has determined that the public agency has complied with [CEQA]." (§ 21168.9, subd. (b).) The ensuing order discharging the writ is appealable as an order enforcing the judgment. (*Los Angeles Internat. Charter High School v Los Angeles Unified School Dist.*, at p. 1355; see also *San Diego Unified Port Dist. v. California Coastal Com.*, *supra*, 27 Cal.App.5th at p. 1128.)

District does assert, however, that appellant untimely filed its amended notice of appeal of the postjudgment order discharging the writ because the deadline to challenge the focused EIR expired on August 26, 2021, 30 days

23

after the court issued its order.  An untimely notice of appeal would render this court without jurisdiction to consider an appeal of that order.  (Cal. Rules of Court, rule 8.104(b); *City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 187.)

Because we have appellate jurisdiction to consider appellant's challenge to the court's February 2021 order, which raises the same arguments as its challenge to the postjudgment order discharging the writ, we arguably do not need to address the timeliness of appellant's amended notice of appeal.  But the amended notice of appeal, filed on September 15, 2021, within 60 days after District served the notice of entry of the court's July 19, 2021 postjudgment order, is timely in any event.  (Cal. Rules of Court, rule 8.104(a).)

II. *Validity of Judgment and Postjudgment Order Discharging Writ*

We turn to the merits: the validity of the court's order permitting District to prepare a focused EIR and judgment granting the peremptory writ, as well as its postjudgment order discharging the writ.

A. *Contentions*

Appellant's challenge is straightforward.  It contends that once the court ordered District to vacate its mitigated negative declaration on finding the Project "may have a significant effect on the environment," section 21151, subdivision (a) required District to prepare an EIR, not the limited, "focused" EIR that it assertedly prepared.  Appellant argues that the law requires a full EIR even when a court finds a mitigated negative declaration inappropriate as to only certain areas or even a single aspect of a project. Appellant points to authority assertedly directly on point, *Farmland Protection, supra*, 71 Cal.App.5th 300, which holds that "if *any* aspect of the project triggers preparation of an environmental impact report, a full

24

environmental impact report must be prepared in accordance with the definition of [an EIR in] section 21061." (*Id*. at p. 310.) According to appellant, "District cannot engage in a meaningful discussion of project alternatives and other CEQA mandates if its analysis is limited to just portions of the . . . Project and not the . . . Project as a whole."

District responds that section 21151 and its corresponding Guideline section 15064, subdivision (f)(1) do not mandate posttrial remedies under section 21168.9. It maintains that once a court finds CEQA noncompliance, section 21168.9 gives it broad discretion to craft equitable remedies and additional options, without requiring a full EIR as a judicial remedy. Undertaking an analysis of section 21168.9's wording, District argues appellant's position mandating a full EIR removes public agency discretion and contradicts or renders superfluous plain language in the statute (§ 21168.9, subd. (a)(1)) permitting the court to void District mitigated negative declaration "in part." It also argues appellant's position does not conform to the Legislature's intent to provide lower courts with flexibility. Thus, District argues that a trial court finding a CEQA violation can void the action or determination in whole or in part, and "can sever and allow aspects of a project to go forward while mandating other aspects be brought into compliance," which advances prompt resolution of lawsuits alleging CEQA noncompliance. District cites authority—including *Berkeley Hillside Preservation, supra,* 60 Cal.4th 1086 and *Preserve Wild Santee, supra*, 210 Cal.App.4th 260—assertedly supporting its position and seeks to distinguish appellant's cited cases. District argues *Farmland Protection, supra,* 71 Cal.App.5th 300 is factually distinguishable and incorrectly decided as contrary to section 21168.9's language and caselaw interpreting it. Finally, District responds that it in fact prepared a "full and complete EIR" and did

not merely resurrect its mitigated negative declaration, but only relied on its analysis because the mitigated negative declaration was also the Project's initial study.

B. *Standard of Review and Prejudice Requirement*

Equitable principles guide a court's decision on which mandates to include in a peremptory writ under section 21168.9. (*Preserve Wild Santee*, *supra*, 210 Cal.App.4th at p. 287.) Thus, we review that decision for abuse of discretion. (*Ibid*.) " ' "An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason." ' " (*Id*. at p. 289.)

On appeal from an order discharging a [peremptory writ of mandate, the issue is normally "whether the trial court erred by ruling that [District] . . . complied with the writ." (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist*., *supra*, 209 Cal.App.4th at p. 1355.) Assessment of this question in the present context involves determining whether District and its focused EIR "complied with [CEQA]." (§ 21168.9, subd. (b).)

Appellant's claim that CEQA does not permit District to use a "focused" or limited EIR rather than a full EIR after it was directed to vacate its mitigated negative declaration " 'is predominantly one of improper procedure' " to be decided by this court independently. (*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 131.) Our task is to determine whether the agency employed correct procedures, " ' "scrupulously enforc[ing] all legislatively mandated CEQA requirements" . . . .' " (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512; see also *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 504 (*Golden Door II*); *Preserve Wild Santee*, *supra*, 219 Cal.App.4th at p. 275.)

26

We are guided by the principle that CEQA must be interpreted " 'to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Protecting Our Water and Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 496; *Sierra Club v. County of Fresno, supra*, 6 Cal.5th at p. 511.) But we do not elevate form over substance; "[t]he purpose of CEQA is not to generate paper, but to compel government at all levels to make decisions consistent with environmental consequences in mind." (*Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283, superceded by statute on other grounds in *City of Redding v. Shasta County Local Agency Formation Com.* (1989) 209 Cal.App.3d 1169, 1177; see *Ocean Street Extension Neighborhood Assn. v. City of Santa Cruz* (2021) 73 Cal.App.5th 985, 1006 (*Ocean Street*); *North Coast Rivers Alliance v. Westlands Water Dist.* (2014) 227 Cal.App.4th 832, 877; *Oceanside Marina Towers Assn. v. Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735, 741.)

We also abide by CEQA's standard of prejudice and the Legislature's intent "that, in undertaking judicial review pursuant to Sections 21168 and 21168.5, courts shall continue to follow the established principle that there is no presumption that error is prejudicial." (§ 21005, subd. (b); *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 487, fn. 10.) Errors that are insubstantial or de minimis are not prejudicial. (*Environmental Protection*, at p. 487, fn. 10.) But a CEQA violation that omits material necessary to informed decisionmaking and informed public participation is prejudicial error. (*Sierra Club v. County of Fresno, supra*, 6 Cal.5th at p. 515.)

27

C. *District's Focused EIR Is CEQA Compliant*

CEQA's purposes, as well as its multi-step framework and "low threshold" for requiring preparation of an EIR in the first instance, are well covered. (*County of Butte v. Department of Water Resources* (2022) 13 Cal.5th 612, 658; *Union of Medical Marijuana Patients, Inc. v. City of San Diego*, *supra*, 7 Cal.5th at pp. 1184-1187; *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.*, *supra*, 1 Cal.5th at p. 945; *Dunning v. Clews* (2021) 64 Cal.App.5th 156, 170; *Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 575-576.) If a proposed activity is a project not exempt from CEQA, an agency "must first undertake an initial study to determine whether the project 'may have a significant effect on the environment.' [Citations.] If the initial study finds no substantial evidence that the project may have a significant environmental effect, the lead agency must prepare a negative declaration, and environmental review ends. [Citations.] If the initial study identifies potentially significant environmental effects but (1) those effects can be fully mitigated by changes in the project and (2) the project applicant agrees to incorporate those changes, the agency must prepare a *mitigated* negative declaration. This too ends CEQA review. [Citations.] Finally, if the initial study finds substantial evidence that the project may have a significant environmental impact and a mitigated negative declaration is inappropriate, the lead agency must prepare and certify an EIR before approving or proceeding with the project." (*Union of Medical Marijuana Patients, Inc.*, at pp. 1186-1187.)

When a reviewing court assesses an agency's CEQA decisionmaking, these principles dictate a straightforward answer to appellant's straightforward proposition: "If no EIR has been prepared for a nonexempt project, but substantial evidence in the record supports a fair argument that

28

the project may result in significant adverse impacts, the proper remedy is to order preparation of an EIR." (*Communities for a Better Environment v. South Coast Air Quality Management Dist*. (2010) 48 Cal.4th 310, 319-320; *Berkeley Hillside Preservation*, *supra*, 60 Cal.4th at p. 1112 [" 'if the [reviewing] court perceives substantial evidence that the project might have [a significant environmental] impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed "in a manner required by law" ' "]; see also *id*. at p. 1122 ["Consistent with [section 21168.9], we have ordered preparation of an EIR upon finding that a public agency had improperly issued a negative declaration for a proposed project"], citing *Communities for a Better Environment*, at pp. 319-320.)  In *Communities for a Better Environment*, the California Supreme Court determined that one could make a fair argument based on substantial evidence that a project would increase nitrogen oxide emissions significantly.  (*Id*. at p. 320.)  Citing CEQA's remedies provision, section 21168.9, the court stated that "[t]he appropriate remedy is therefore to order the District to set aside its Negative Declaration and project approval and to prepare an EIR that will evaluate, along with any other potentially significant impacts, these increased emissions."  (*Ibid*.)

This conclusion does not end our analysis of the merits, however.  We must decide whether District's document—despite it being denoted a "focused EIR"—nevertheless complies with CEQA's "informational mandate" (*Ocean Street*, *supra*, 73 Cal.App.5th at p. 1006; *County of Butte v. Department of Water Resources*, *supra*, 13 Cal.5th at p. 658 [given its role, an EIR is "commonly referred to as an 'informational document' "]; § 21061; Guidelines, § 15121.)

"Ideally, an EIR serves 'to identify the significant effects on the environment of a project, to identify alternatives to the project, and to indicate the manner in which those significant effects can be mitigated or avoided.' " (*County of Butte v. Department of Water Resources*, *supra*, 13 Cal.5th at p. 658, quoting § 21002.1, subd. (a).) "It serves to inform decision makers and the general public about the nature and environmental impact of a proposed project, feasible ways to reduce that impact (often through the mechanism of mitigation measures), and possible alternatives to the project." (*Ibid.*, citing § 21061.) More specifically, "the document must include a description of the proposed project and its environmental setting and discussions of (1) the possible environmental effects of the project, (2) feasible measures to mitigate any significant, adverse environmental effects of the project, (3) the comparative environmental effects of a range of reasonable alternatives to the proposed project, including a 'no project' alternative, (4) the cumulative impact of the project's various environmental effects, and (5) the economic and social effects of the project." (*Id.* at pp. 658-659, citing Guidelines, §§ 15124, 15126, 15126.4, 15126.6, 15131.)

"When the project is publicly financed or undertaken . . . feasible mitigation measures must be incorporated into the plan or project design." (*County of Butte v. Department of Water Resources*, *supra*, 13 Cal.5th at p. 659, citing Guidelines, § 15126.4, subd. (a)(2) & § 21081.6, subd. (b).)[12] "Further, to 'ensure that the mitigation measures and project revisions

---

[12]  "Mitigation measures are modifications of the proposed design and implementation of a project imposed by the lead agency to reduce the project's adverse environmental effects.  If an EIR identifies significant environmental effects, CEQA requires the adoption of mitigation measures when 'it is feasible to do so.' " (*County of Butte v. Department of Water Resources*, *supra*, 13 Cal.5th at p. 659, citing § 21002.1, subd. (b).)

identified in the EIR . . . are implemented,' the lead agency, when approving the EIR, must also adopt 'a program for monitoring or reporting on the revisions which it has required in the project and the measures it has imposed to mitigate or avoid significant environmental effects.' " (*Id*. at p. 659, citing Guidelines, § 15097, subd. (a) & § 21081.6, subd. (a)(1).)

An EIR must have a " 'sufficient degree of analysis to provide decisionmakers with information which enables them to make a decision which intelligently takes account of environmental consequences . . . . The courts have looked not for perfection but for adequacy, completeness, and a good faith effort at full disclosure.' " (*Ocean Street*, *supra*, 73 Cal.App.5th at p. 1004, quoting Guidelines, § 15151 & *Sierra Club v. County of Fresno*, *supra*, 6 Cal.5th at p. 514.) We have said there is no "litmus test or minimum length required to ensure a discussion is sufficiently detailed to comply" and "[w]e do not look for technical perfection or ' "an exhaustive analysis," ' but instead consider whether the information supplied is adequate, complete, and [District] has made a good faith effort at fully disclosing the information." (*Ocean Street*, at p.1006, citing *Sierra Club v. County of Fresno*, *supra*, 6 Cal.5th at p. 515.) A lead agency "may discuss potential project impacts at a 'level of specificity . . . determined by the nature of the project and the rule of reason . . . .' " (*Sierra Watch v. County of Placer* (2021) 69 Cal.App.5th 86, 105.)

An EIR can meet these requirements even when information about environmental impacts mitigated to a level of insignificance or mitigation measures is contained in an initial study, if that study "is available in its entirety and incorporated into the EIR." (*Ocean Street*, *supra*, 73 Cal.App.5th

31

at pp. 1006-1008.)[13]  "[R]ather than elevate form over function . . . we ask whether the information is adequate to facilitate ' " 'informed agency decisionmaking and informed public participation.' " ' " (*Id*. at p. 1006.)

Other than stating an EIR must describe a reasonable range of alternatives to the Project and its location, and asserting that District cannot meet this requirement if its analysis "is limited to just portions of the . . . Project," appellant does not challenge in any specific or meaningful way the sufficiency of the analyses undertaken by District, whether it be the issues whose discussion the trial court found inadequate (biological resources and construction noise), mitigation, or any other required discussion for an EIR. Its challenge is solely directed at the procedural question of whether a focused EIR was a proper remedy under the circumstances.  But, as District points out, its mitigated negative declaration was also its initial study.  The focused final EIR consists of the draft focused EIR as well as comments and, as Guidelines permit, attaches the initial study/mitigated negative declaration (Appendix 1-1) addressing insignificant effects.  The final focused EIR contains a "project summary" describing the project and its components,

---

[13]  Guidelines provide that an EIR "shall contain a statement briefly indicating the reasons that various possible significant effects of a project were determined not to be significant and were therefore not discussed in detail in the EIR. *Such a statement may be contained in an attached copy of an initial study*." (Guidelines § 15128, italics added; see also Guidelines § 15143 ["A copy of the Initial Study may be attached to the EIR to provide the basis for limiting the impacts discussed"].)  In *Ocean Street*, we explained we were presented with a situation where neither CEQA nor the Guidelines addressed how to characterize an impact in the EIR after the lead agency determined in an initial study it was mitigated to less than significant. (*Ocean Street*, *supra*, 73 Cal.App.5th at p. 1005.)

including square feet covered.[14]  It also includes CEQA findings of fact, recounting the findings District made in its initial study/mitigated negative declaration determining either impacts on the various required CEQA categories were less than significant, or mitigated to a level of

---

[14]   The description (including a site plan) encompasses the entire project and reason for it, stating: "Because of the age of the existing facilities, high cost for modernization, inefficient classroom design, and poor site layout related to safety and transportation, the District is proposing to demolish, remove, and reconstruct the Del Mar Heights School.  The reconstructed campus would have a central indoor/outdoor hub, an Innovation Center, Modern Learning Studios, and several indoor/outdoor learning environments, along with increased parking spaces, separate drop-off/pick-up zones for kindergarten and main campus (grades 1-6), a larger multiuse space, and enhanced outdoor play areas.  [¶]  The project components would include three permanent one-story buildings (66,823 sf), multiuse building, administration and kindergarten building, and a grades 1-6 classroom building with 21 classrooms.  The campus would also have two turf baseball fields overlapping the multiuse field (108,692 sf), hardcourts and playgrounds (34,546 sf), landscaped and turf areas (27, 761 sf), three areas with play structures, vegetable garden (2,714 [sf]), lunch shelter, and two parking lots with a total of 80 spaces.  Figure 1-4, *Conceptual Site Plan*, shows the proposed reconfiguration and improvements on the site."

insignificance.[15]  Both the focused EIR and the CEQA findings of fact contain a discussion of project alternatives including a "no project" alternative in which the school would not be rebuilt, but "minor fixes and updates would occur" (i.e., replacement of portable buildings, asbestos removal, technology infrastructure) and a "campus modification" alternative. The final focused EIR attaches a mitigation monitoring and reporting program, which was "developed to provide a vehicle by which to monitor mitigation measures and conditions of approval outlined in the focused draft [EIR]" and was assertedly "prepared in conformance with section 21081.6 . . . and the Del Mar Union School District Monitoring Requirements."  Appellant does not challenge the sufficiency of District's CEQA findings or mitigation monitoring and reporting program.

It is true that District's board resolution approving, adopting and certifying the final focused EIR also "certifies" the initial study/mitigated negative declaration.  But that technicality does not affect our conclusion that District's environmental document complied with CEQA's requirements. Where, as here, the focused EIR incorporates informed discussion and

_____

15   The findings of fact "identifie[d] the issues addressed in the [mitigated negative declaration], the level of environmental impact, any mitigation measures that were included and the impact level after mitigation is applied."  The issues addressed in the following 23 pages were aesthetics, agriculture and forestry resources, air quality including short term and long term operation-related impacts, biological resources (other than those further detailed in the final focused EIR), cultural resources, energy, geology and soils, greenhouse gas emissions, hazards and hazardous materials, hydrology and water quality, land use and planning, mineral resources, noise, population and housing, recreation, transportation, tribal cultural resources, utilities and service systems, and wildfire.  As the findings of fact point out, the trial court ruled these issues were adequately addressed in the initial study/mitigated negative declaration, and appellant did not further contest that finding.

analysis that otherwise fulfills the requirements for the public's consideration of significant impacts, mitigation, and alternatives, appellant must do more to demonstrate that District's document does not fulfill CEQA's information disclosure requirements.

We disagree with appellant that *Farmland Protection* compels reversal. In *Farmland Protection*, plaintiffs challenged a county's decision to adopt a mitigated negative declaration for a project. (*Farmland Protection*, *supra*, 71 Cal.App.5th at p. 304.) The trial court found merit in three of their challenges, ruling that substantial evidence supported a fair argument that the project may have a significant impact on three different species. (*Ibid*.) It apparently did not order the county to vacate its mitigated negative declaration, but ordered it "to undertake further study and prepare a subsequent [EIR] to address only the potential impacts of the project on the three species." (*Id*. at p. 308.) It also ordered that, pending further environmental review, the project approval and related mitigation measures would remain in effect while the project continued. (*Ibid*.; see also *id*. at p. 304.) The county eventually prepared an EIR regarding impacts only on the three species and adopted a resolution certifying the EIR, which found no significant impacts. (*Id*. at p. 308.)

On appeal, plaintiffs argued that once the court found evidence of a significant environmental impact " 'in any area[,] the lead agency *must* proceed to prepare an [EIR] *for the proposed project*.' " (*Farmland Protection*, *supra*, 71 Cal.App.5th at pp. 309-310.) The county argued that if the court found certain aspects of its review did not comply with CEQA, it had discretionary authority under section 21168.9 to craft a remedy, and nothing precluded a court from " 'impos[ing] appropriate lesser remedies to an [EIR].' " (*Id*. at p. 309.)

The Court of Appeal agreed with the plaintiffs: "The remedies under section 21168.9 do not trump the mandatory provisions of [CEQA]. Section 21168.9 is intended to facilitate *compliance* with [CEQA]; it does not provide a means to circumvent the heart of [CEQA]—the preparation of an [EIR] for the project." (*Farmland Protection*, *supra*, 71 Cal.App.5th at p. 309.) It explained that nothing in section 21168.9 gave the court authority to "disregard the mandatory three-tier approach under [CEQA] and to split a projects impact analysis across two types of environmental review documents." (*Id*. at p. 310.) Rather, CEQA "requires the preparation of *either* a mitigated negative declaration . . . *or* an [EIR] . . . *for the project*, depending on the circumstances and which tier of the process is triggered." (*Id*. at p. 311.) The Court of Appeal held the lower court's order to prepare a limited EIR as to only certain aspects of the project did not constitute an order bringing the agency's action into compliance with CEQA, as section 21168.9 required. (*Ibid*.) "The only order that would have done so, given the trial court's finding that the fair argument test had been met as to the three species, was an order to prepare a full [EIR] for the project." (*Ibid*.)

Our holding—that the proper remedy upon the trial court finding record evidence supporting a fair argument that a project may result in significant environmental impacts is preparation of an EIR—is consistent with *Farmland Protection*, *supra*, 71 Cal.App.5th 300. *Farmland Protection* is silent on the question presented here; in that case there was no indication the county's mitigated negative declaration also served as an initial study or was appended to the EIR. Here, District's final focused EIR incorporated and attached the initial study's discussion of impacts to comprise a single EIR document. As we have explained, this can be adequate to facilitate informed agency decisionmaking and public participation. (*Ocean Street*, *supra*, 73

36

Cal.App.5th at pp. 1005, 1008.)  To the extent *Farmland Protection* is inconsistent with *Ocean Street* in suggesting that an EIR can never attach and incorporate discussion in this manner, we choose to follow this court's *Ocean Street* decision.  Accordingly, we affirm the judgment and postjudgment order.

DISPOSITION

The judgment and postjudgment order are affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


DATO, J.